**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEESHA ANDERSON, | x : |
| Plaintiff, | : : : Case No. 1:23-cv-08347 (AS) |
| vs. | : : |
| AMAZON.COM, INC., AMAZON.COM SERVICES LLC, STEVE BOOM and RYAN REDINGTON, | : : : : |
| Defendants. | : : |
| | x |

**MEMORANDUM OF LAW IN SUPPORT OF**
**AMAZON DEFENDANTS' MOTION TO DISMISS COMPLAINT**
**PURSUANT TO RULE 12(B)(6)**

**DAVIS WRIGHT TREMAINE LLP**
Michael Goettig
Rodrigo Tranamil
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
(212) 489-8230
*Attorneys for Defendants*

**<u>TABLE OF CONTENTS</u>**

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF MATERIAL FACTUAL ALLEGATIONS ......................................... 2

        A.      The Parties ................................................................................................ 2

        B.      Plaintiff Reports to Akzin and Redington (August 2019-March 2020)................. 3

        C.      Plaintiff Reports to Postelle and Simonian (March 2020-December 2020) ........... 6

        D.      Plaintiff's Placement Into Pivot (September-November 2020) ........................... 7

        E.      Plaintiff Reports to Postelle (December 2020-February 2022) ............................ 8

        F.      The "Whistleblower" (April 2021) ...................................................................... 10

        G.      Plaintiff's Resignation (February 2022) ............................................................ 10

III.    LEGAL STANDARD ............................................................................................ 10

IV.     ARGUMENT ...................................................................................................... 11

        A.      Plaintiff Was Not Constructively Discharged..................................................... 12

        B.      Plaintiff Was Not Treated Differently Because of Her Race................................. 14

                1.      Plaintiff Experienced No Adverse Employment Action........................... 14

                2.      Plaintiff Did Not Experience a Hostile Work Environment ..................... 15

        C.      Plaintiff Was Not Retaliated Against................................................................. 18

V.      CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alvarado v. Nordstrom, Inc.*,
    685 F. App'x 4 (2d Cir. 2017) .................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................11

*Boomer v. Bruno*,
    134 F.Supp.2d 262 (N.D.N.Y. 2001) ......................................................14

*Brown v. Montefiore Med. Ctr.*,
    No. 19 CV 11474 (ALC), 2021 WL 1163797 (S.D.N.Y. Mar. 25, 2021) ..............12

*Chukwuka v. City of New York*,
    795 F. Supp. 2d 256 (S.D.N.Y. 2011), *aff'd*, 513 F. App'x 34 (2d Cir. 2013) .......14

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ............................................................................14

*Deveaux v. Skechers USA, Inc.*,
    No. 19-cv-9734 (DLC), 2020 WL 1812741 (S.D.N.Y. Apr. 9, 2020) ..................17

*E.E.O.C. v. Bloomberg L.P.*,
    967 F. Supp. 2d 816 (S.D.N.Y. 2013) .....................................................12

*Fincher v. Depository Trust and Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010) ...................................................................12

*Guity v. Uniondale Union Free Sch. Dist.*,
    No. 15-cv-5693 (SJF) (AKT), 2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017) .........18

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) ..................................................................................15

*Henry v. NYC Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014) .......................................................14

*Itakura v. Primavera Galleries, Inc.*,
    Index No. 08-cv-9027, 2009 U.S. Dist. LEXIS 55198
    (S.D.N.Y. June 30, 2009) ........................................................................11

iii

*Jenkins v. Arcade Bldg. Maintenance*,
    44 F. Supp. 2d 524 (S.D.N.Y. 1999).................................................................14

*Johnson v. Rowley*,
    569 F.3d 40 (2d Cir. 2009)...............................................................................11

*Jones v. City of N.Y.*,
    No. 14-CV-0826 (CBA)(RLM), 2015 WL 502227 (E.D.N.Y. Feb. 5, 2015) ........17

*Lamarr-Arruz v. CVS Pharmacy, Inc.*,
    271 F. Supp. 3d 646 (S.D.N.Y. 2017)...............................................................15

*Lenart v. Coach, Inc.*,
    131 F. Supp. 3d 61 (S.D.N.Y. 2015).............................................................11, 16

*McCalla v. City of N.Y.*,
    No. 15-CV-8002 (LAK) (AJP), 2017 WL 3601182 (S.D.N.Y. Aug. 14, 2017)....12

*McHenry v. Fox News Network, LLC*,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020).................................................................17

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
    No. 10–CV–1777 (ADS)(AKT), 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011)........16

*Ochei v. Coler/Goldwater Memorial Hosp.*,
    450 F.Supp.2d 275 (S.D.N.Y.2006)..................................................................16

*Pa. State Police v. Suders*,
    542 U.S. 129 (2004).........................................................................................13

*Petrosino v. Bell Atl.*,
    385 F.3d 210 (2d Cir. 2004).............................................................................12

*Shultz v. Congregation Shearith Israel of City of N.Y.*,
    867 F.3d 298 (2d Cir. 2017).........................................................................18, 19

*Sletten v. LiquidHub, Inc.*,
    No. 13–CV–1146 (NRB), 2014 WL 3388866 (S.D.N.Y. July 11, 2014)..............20

*Spires v. MetLife Grp., Inc.*,
    No. 18-CV-4464 (RA), 2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019) ..........12, 13

*Spiteri v. Russo*,
    No. 12 Civ. 2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom.*
    *Spiteri v. Camacho*, 622 Fed. Appx. 9 (2d Cir. 2015) ...........................................11

*Tulino v. Ali*,
    15-cv-7106 (JSR), 2019 WL 1447134 (S.D.N.Y. Feb. 27, 2019) ..........................13

*Whidbee v. Garzarelli Food Specialties, Inc.*,
  223 F.3d 62 (2d Cir. 2000)..................................................................................12

*Williams v. Metro-N. Commuter R. R. Co.*,
  No. 11 CIV. 7835, 2012 WL 2367049 (S.D.N.Y. June 20, 2012)...........................................17

*Williams v. N.Y.C. Housing Auth.*,
  872 N.Y.S.2d 27 (1st Dept. 2009) ..........................................................................18

STATUTES

42 U.S.C.
  § 1981................................................................................................... passim
  § 1981(a) ..................................................................................................14

New York City Human Rights Law.................................................................. passim

New York State Human Rights Law .............................................................. passim

Defendants Amazon.com, Inc., and Amazon.com Services LLC (referred to collectively with Amazon.com, Inc., as "Amazon" or "Amazon Defendants"), by and through their attorneys, state as follows in support of their motion to dismiss the Second Amended Complaint of plaintiff Keesha Anderson ("Anderson" or "Plaintiff") for failure to state a cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.C.P.").

## I.    INTRODUCTION[1]

Plaintiff commenced this action on September 20, 2023 (Docket Doc. No. 1), and subsequently filed an amended complaint on October 26, 2023 (Docket Doc. No. 24). On January 2, 2024, in response to pending motions to dismiss that pleading, Anderson filed a 68-page, 245-paragraph amended complaint (Docket Doc. No. 63, the "Complaint," or "Cplt.") asserting six causes of action sounding in discrimination and retaliation under 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL") against the Amazon Defendants, Steve Boom ("Boom"), and Ryan Redington ("Redington," and referred to collectively with Boom as "Individual Defendants"). The causes of action in the Complaint must be dismissed for failure to state a claim upon which relief can be granted because they are predicated upon a legal theory that finds no basis in Section 1981, NYSHRL or NYCHRL jurisprudence and fundamentally fail to satisfy the *Twombly/Iqbal* plausibility standard. Under a novel theory that Plaintiff has labeled "discrimination laundering," the Complaint alleges that the Amazon Defendants were engaged in a years-long conspiracy to induce her to leave her employment – which she did in February 2022. This involved, among other things, reducing the budget for events and experiential marketing (at a time when the COVID-19

---

[1] The Amazon Defendants incorporate by reference the arguments pertaining to improper venue set forth in the Individual Defendants' memorandum of law in support of their motion to dismiss the Complaint.

pandemic severely curtailed in-person events globally), placing Plaintiff into Amazon's performance improvement program Pivot (which Plaintiff successfully completed), and arranging it so that Plaintiff's immediate and skip-level supervisors were people of color. According to the Complaint, an unnamed "Whistleblower" informed Plaintiff of this scheme in April 2021. Fatal to Plaintiff's theory, however, is the fact that even according to the allegations in the Complaint, Plaintiff was not intentionally subjected to a working environment so objectively intolerable that any reasonable employee would have been compelled to quit. Rather, Plaintiff's supervisors praised her job performance and offered support and encouragement to her – so much so, in fact, that upon receiving notice that Plaintiff had tendered her resignation, her immediate supervisor *attempted to convince her to continue her employment with the Amazon Defendants*. This was only the most recent time over the course of Plaintiff's employment that the individuals identified as purported wrongdoers in the Complaint encouraged Plaintiff to continue her employment with Amazon. While the Complaint may plausibly allege that Plaintiff was dissatisfied with the rate of her professional development as an Amazon employee, it fundamentally *fails* to allege with plausibility that Plaintiff was treated differently because of her race or retaliated against. As such, it must be dismissed in its entirety.

## II.    STATEMENT OF MATERIAL FACTUAL ALLEGATIONS[2]

Due to the sheer volume of allegations in the Complaint that have no bearing upon Plaintiff's claims, only those factual allegations material to her claims are summarized herein.

### A.    The Parties

Plaintiff is a Black/African American female who was employed by the Amazon Defendants as a Senior Event & Experiential Marketing Specialist from August 19, 2019, to

---

[2] Solely for purposes of this motion, the Amazon Defendants accept the well-pleaded factual allegations in the complaint as true.

February 2022. (Cplt., ¶ 2.)  Amazon.com, Inc. is a multinational technology company that, *inter alia*, operates Amazon Music, a streaming platform and online music store. (Cplt., ¶ 3.)  According to the Complaint, Amazon.com Services LLC sells various Amazon Basics branded products. (Cplt., ¶ 3.)  Boom served as VP, Amazon Music when Plaintiff was first employed and is currently Vice President Audio, Twitch & Games. (Cplt., ¶ 4.)  He continues to serve as head of Amazon Music. (*Id.*)  Redington, who reports directly to Boom, was the Director of Amazon Music when Plaintiff was first employed and is currently Vice President, Amazon Music, Music Industry. (Cplt., ¶ 5.)  Plaintiff reported directly to Redington for approximately two months, from mid-January to early March 2020. (Cplt., ¶ 30.)

## B.    Plaintiff Reports to Akzin and Redington (August 2019-March 2020)

According to the Complaint, in the first months of her employment with Amazon, Plaintiff experienced challenges in her working relationship with her then-immediate supervisor Abigail Akzin, Brand Leader, Amazon Music Growth and Marketing ("Akzin"). (Cplt., ¶¶ 17-18, 137-38.) The Complaint alleges that Akzin excluded her from meetings and limited her access to marketing events (Cplt., ¶ 18(b-c)), discounted her recommendations for experiential events (Cplt., ¶ 18(d)), and reallocated funds that had been budgeted for Plaintiff's events (Cplt., ¶ 18(e)). The Complaint also alleges that in October 2019, Akzin asked Plaintiff to prepare an experiential marketing strategy plan for the upcoming year (the "2020 Marketing Plan") but subsequently "provided Plaintiff with very little to no support" in drafting that document (Cplt., ¶ 18(f)). Plaintiff also found Akzin's alleged observation[3] that Plaintiff "seems to have a passion-point for hip-hop" to be "insensitive, derogatory and presumptive." (Cplt., ¶ 18(h-i).)  The Complaint further alleges that, upon information and belief, Akzin "was known to be tougher on people of color" and that

---

[3] It does not appear that Plaintiff has first-hand knowledge that Akzin even made this remark, as it is alleged "upon information and belief." Cplt., ¶ 18(h).

her "behavior towards Plaintiff seemed heightened in comparison to the more favorable treatment she offered non-minority team members." (Cplt., ¶ 18.)   The Complaint also alleges that, for a period of time, human resources representatives sat in on team meetings to monitor Akzin's behavior because "[u]pon information and belief . . . a minority member of her team had made complaints." (Cplt., ¶ 18.)

The Complaint alleges that in November and December 2019, Plaintiff met with Human Resources Business Partner Mark Dizon ("Dizon") to discuss Akzin's "hostile and bullying behavior." (Cplt., ¶¶ 19, 21-22.)   Plaintiff allegedly expressed her belief to Dizon that Akzin's treatment was racially motivated (Cplt., ¶ 22). As examples of Akzin's purported race-based "hostile and bullying" behavior, Plaintiff shared with Dizon that Akzin had invited an employee named Terika Palmer (who is African American) ("Palmer") to meet with Plaintiff on Plaintiff's first day of employment (Cplt., ¶ 22(a)) but subsequently had *not* included Plaintiff in the onboarding of Philicia Darns (who is also African American) ("Darns") when she was hired in late 2019 (Cplt., ¶¶ 18(g), 22(d)). She also shared with Dizon her belief that Akzin provided Shelby Case (who is Caucasian) ("Case") with more assistance and support for her 2020 Marketing Plan than she had received. (Cplt., ¶ 22(b).)   In further support of her belief that Akzin's behavior was racially motivated, Plaintiff shared with Dizon an incident in which Palmer "was forced to apologize to each member of the team," – something that Plaintiff believed would not have happened if Palmer had been Caucasian. (Cplt., ¶ 22(e-f).)

According to the Complaint, Plaintiff also mentioned to Boom and Redington her fraught relationship with Akzin but did not raise with them her suspicion that race played any part in that dynamic. (Cplt., ¶¶ 23-29.)   Specifically, during Boom's conversation with her on November 13, 2019, he "expressed how impressed he was with many of her ideas and encouraged Plaintiff to

pursue them." (Cplt., ¶ 23.)  When Plaintiff shared with him that she was considering ending her employment with Amazon because "the position she was hired to fill didn't seem to be panning out as she expected," Boom assured her that Amazon was "still interested in 'going big' to further Amazon [M]usic's presence within the market and encouraged Plaintiff to continue in that vein." (Cplt ¶ 24.) Similarly, the Complaint alleges that, during a meeting on November 22, 2019, Plaintiff "informed Defendant Redington that she had also spoken to Mark Dizon about the issues she was having with Ms. Akzin" (Cplt., ¶ 23), in response to which Redington "encouraged her to hang on and informed her that Defendant Boom was *'working on making changes to the organization.'*" (Cplt., ¶ 27, emphasis in original.)

Due to those organizational changes in early January 2020, the experiential team, which consisted of Plaintiff and Darns, moved to the Artist Marketing group, at which time Plaintiff no longer reported to Akzin and instead reported directly to Redington. (Cplt., ¶ 29.)  Darns had been hired in late 2019 and at that time reported directly to Akzin. (Cplt., ¶ 18(g).)  Plaintiff "felt offended" by this reporting structure because she assumed that Darns would be her direct report and was under the impression that with the transition to Redington's group, she would become Darns's supervisor. (Cplt., ¶¶ 18(g), 22(d), 31.)  In fact, Darns did not report to her – a development the Complaint alleges had to do with Plaintiff discussing her relationship with Akzin with Redington. (Cplt., ¶¶ 30-31.)  The Complaint also alleges that around March 2020, Plaintiff learned that her budget for the 2020 year would be reduced by approximately one-third. (Cplt., ¶ 34.)

During the approximately two-month period that Redington was Plaintiff's direct supervisor, from January to March 2020, he gave her positive feedback on her participation in the production of several events and in her March 2020 performance review described her "ability to just get things done" as her "superpower." (Cplt., ¶¶ 39, 104.)  In that performance review, he

observed, "You are a fast mover and can navigate through ambiguity well. You have also done a good job of compiling your prior experiences and relationships to push Amazon Music into a new space (events/experiential)." (Cplt., ¶ 39.)

### C.   Plaintiff Reports to Postelle and Simonian (March 2020-December 2020)

On March 13, 2020, Redington reassigned Plaintiff's and Darns's reporting structure so that they reported to Kirdis Postelle ("Postelle") and Tatiana Oliviera Simonian ("Simonian"), two women of color (Postelle is African American and Simonian is Hispanic) (Cplt., ¶ 35). "Upon information and belief," this was part of a larger plan to minimize any potential legal exposure resulting from the Defendant's efforts to retaliate against Plaintiff. (Cplt., ¶¶ 35-37, 40).  According to the Complaint, Postelle and Simonian were "straw managers" who had been instructed by Redington to "take steps to get rid of" Plaintiff because she was a "problem employee." (Cplt., ¶¶ 40, 43, 138.)  The Complaint alleges that this was part of a "discrimination laundering" scheme, to have managers of color orchestrate the termination of Plaintiff's employment. (Cplt., ¶¶ 45-48.)

According to the Complaint, Plaintiff's relationship with Simonian "seemed strained from the start." (Cplt., ¶¶ 50.)  Among other things, the Complaint alleges Plaintiff was excluded from certain meetings (Cplt., ¶ 52(a)), was given tasks she perceived as below her rank (Cplt., ¶ 52(b)-(f)), and was "unjustifiably reprimanded" (Cplt., ¶ 52(i)(i), (i-iii)). In addition, the Complaint alleges that Plaintiff was tasked with assisting "similarly situated non-protected co-workers" such as "Jamie Fullen [('Fullen')], a Caucasian Level 5 employee … [d]espite being the more senior employee at a Level 6[.]" (Cplt., ¶¶ 52, 52(c)-(e).)  This was at a time when "the [COVID-19] pandemic understandably impacted [Plaintiff's] ability to put on in-person events." (Cplt., ¶ 52(f).)

At regular intervals from April 2020 to August 2020, Plaintiff reached out to Dizon concerning the challenges she was facing with Simonian's management. (Cplt., ¶¶ 50, 53, 60-61, 64-65, 96.)  Around this time, Plaintiff was continuing to work on her 2020 Marketing Plan,

including by receiving feedback from Simonian and Postelle. (Cplt., ¶¶ 62, 66.)  Upon completion of the project, Simonian and Postelle "were very complimentary" and said that it was "a significant improvement" from her first one and that she had done "a great job!" (Cplt., ¶ 67.)

"In or about July 2020, [] Simonian's attitude [toward Plaintiff] seemed to shift and she became less abrasive toward Plaintiff." (Cplt., ¶ 71.)  At that same time, Simonian informed Plaintiff that "Amazon's needs and the ongoing pandemic" had prompted a reevaluation of Plaintiff's position, with the development of a new job description that "would require less in the way of experiential marketing events and more *live stream* initiatives." (Cplt., ¶ 72, emphasis in original.)  Simonian shared with Plaintiff that as an alternative to continuing in this new role, she could opt to accept a severance package and leave Amazon. (Cplt., ¶¶ 72, 75.)  The Complaint alleges that Plaintiff interpreted Simonian to be encouraging her to accept the exit package and leave Amazon. (Cplt., ¶¶ 76, 92.)  Postelle, on the other hand, encouraged Plaintiff to accept the new role, complimented her overall performance, stated that she was "really, really impressed" with Plaintiff, and shared with Plaintiff that she would have Postelle's "full support" in the new role. (Cplt., ¶ 84.)  While the Complaint alleges that Simonian attempted to "renege" on the offer of continued employment under the new job description (Cplt., ¶ 94), it is clear that Plaintiff's employment continued until February 2022 (Cplt., ¶ 194).

### D.    Plaintiff's Placement Into Pivot (September-November 2020)

On September 21, 2020, Simonian informed Plaintiff that she was being placed into Pivot, "a mechanism used by Amazon to assist employees who are falling short of performance expectations." (Cplt., ¶ 99.) Simonian identified three areas for improvement: inconsistency of ownership in strategy and execution, the "significant coaching" that Plaintiff needed in order to complete the 2020 Marketing Plan, and Plaintiff's failure to complete a training course. (Cplt., ¶ 102.) The Complaint characterizes these grounds as "completely baseless" and "simply a

pretext." (Cplt., ¶ 103.) The Pivot documentation set forth performance benchmarks to be achieved by certain dates, which the Complaint alleges there was "no realistic way" for Plaintiff to achieve. (Cplt., ¶ 110.) Two weeks after the Pivot process began, on October 5, 2021, the temporal benchmarks were extended, at which time "Ms. Simonian vowed her full support and repeatedly stated that Plaintiff should seek as much assistance from others as she needed." (Cplt., ¶ 115.)

In October 2020, "while Plaintiff was still in the process of completing [the Pivot benchmarks]," Simonian asked Plaintiff to provide guidance to Jamie Fullen ("Fullen"), a junior employee responsible for livestreaming events who was Caucasian. (Cplt., ¶ 52(c).) According to Simonian, this request was because she felt Fullen could benefit from Plaintiff's "leadership skills." (Cplt., ¶ 119.) Plaintiff successfully completed the Pivot process on or around November 18, 2020, and resumed her duties as Senior Events & Experiential Marketing Specialist. (Cplt., ¶ 122.)[4] Shortly thereafter, in a meeting with Plaintiff, Postelle reiterated that Plaintiff was "doing so great" and that she was committed to Plaintiff's professional development. (Cplt., ¶ 123.)

### E.    Plaintiff Reports to Postelle (December 2020-February 2022)

In December 2020, Simonian "transferr[ed] to another group within Amazon, and [was] no longer [Plaintiff's] supervisor." (Cplt., ¶ 124.)  As a result, Plaintiff reported directly to Postelle. (*Id.*)  In the year that followed, Plaintiff received consistently glowing feedback and reviews from her supervisor Postelle and peers, including, for example, an "overwhelmingly positive" annual performance review (Cplt., ¶ 133); Postelle's statement that Plaintiff was a "great producer" who "gets things done" and was "able to work well with people" (Cplt., ¶ 128); Postelle's expression of a desire to "show people how great [Plaintiff was]" in November 2021 (Cplt., ¶ 177); and a package from Postelle with a note stating that Plaintiff was "an amazing part of this team" (Cplt.,

---

[4] This paragraph of the Complaint states that the Pivot process was concluded in November 2021. This is a typographical error. See Cplt., ¶¶ 99, 115, 117-119, 121.

¶ 187). The Complaint characterizes this support and feedback as part of a years-long conspiracy to force Plaintiff to end her employment with Amazon (*see, e.g.,* Cplt., ¶¶ 125-32).

During this period, Postelle shared with Plaintiff that the COVID-19 pandemic continued to limit the extent to which Amazon was prepared to plan and execute in-person experiential events. (Cplt., ¶ 160.)  On June 3, 2021, Postelle sent an e-mail to Plaintiff and others stating that "Amazon Music was officially 'back outside' and getting involved with in-person events" but simultaneously shared with Plaintiff that in-person events remained a "low priority" at the time. (Cplt., ¶¶ 161-62, 172.)  Postelle later shared with Plaintiff that "building cross-category, content marketing and *Twitch* were leadership's priorities, <u>not</u> events." (Cplt., ¶ 178.)  According to the Complaint, Plaintiff felt marginalized because she was not being included in those other marketing events during this period. (Cplt., ¶¶ 166-70.)  Nevertheless, as Amazon transitioned to post-pandemic events, Plaintiff "began to perform more in the way of Level 6 tasks" involving in-person experiential events. (Cplt., ¶¶ 163, 177.)  During a November 17, 2021, meeting in which they discussed one such event, Postelle "congratulated Plaintiff for her efforts," and claimed, "***now I can show people how great you are.***" (Cplt., ¶ 177, emphasis in original.)

On January 10, 2022, Plaintiff received a package from Postelle which included a message stating: "***Hi Keesha!  Just a little something to celebrate an amazing 2021 and to toast an even better 2022. Thank you for everything you did last year!  You're an amazing part of this team!***" (Cplt., ¶ 187, emphasis in original.)  Shortly thereafter, Postelle informed Plaintiff that the budget for experiential events in the upcoming year was $3.5 million, notwithstanding her efforts to secure a $6 million budget for Plaintiff. (Cplt., ¶ 188)  This was less than the budget for experiential events prior to the pandemic (Cplt., ¶ 188) and "upon information and belief" was significantly less than the budget allocated to livestreaming events (Cplt., ¶¶ 52(c), 188).

### F.      The "Whistleblower" (April 2021)

According to the Complaint, an unidentified individual referred to as the "Whistleblower" approached Plaintiff in April 2021 to tell her that "after complaining about … Akzin's racially biased and hostile behavior [in late 2019], Plaintiff was effectively labeled a *'problem employee'* by the leadership" (Cplt., ¶ 137, emphasis in original) and that "within days of Ms. Postelle and Ms. Simonian starting at Amazon [in early 2020], Redington informed them that Plaintiff was a *'problem employee'* who needed to be *'focused,'* making it clear that the company wanted Plaintiff *'exited'* from the company." (Cplt., ¶ 138, emphasis in original.)  The Complaint also alleges that in a subsequent conversation in January 2022, the "Whistleblower" "acknowledged that <u>**had Plaintiff not complained about Ms. Akzin's behavior [in late 2019], Plaintiff would not have been targeted for termination**</u> in the first place." (Cplt., ¶ 190, emphasis in original.)

### G.      Plaintiff's Resignation (February 2022)

On February 15, 2022, Plaintiff tendered her resignation from her position with Amazon. (Cplt., ¶ 194). According to the Complaint, Plaintiff's resignation followed a discussion with her psychologist during which they discussed that "it might be beneficial to her health if she removed herself from her tumultuous work circumstances and environment" (Cplt., ¶ 193). After receiving Plaintiff's notice of resignation on February 15, 2022, Postelle contacted her the following day to explore the possibility of taking a leave of absence rather than ending her employment with Amazon. (Cplt., ¶ 194.)  Specifically, according to the Complaint, Postelle said, *"I know Amazon ain't for everybody, but you're doing so well, and we're back outside. Now is your time."* (Cplt., ¶ 191, emphasis in original). Notwithstanding Postelle's efforts to persuade her to remain with Amazon, Plaintiff voluntary resigned in February 2022.

## III.   LEGAL STANDARD

A pleading is appropriately dismissed for failure to state a claim pursuant to Rule 12(b)(6)

if it fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Bald assertions and legal conclusions, or legal conclusions masquerading as facts need not be accepted as true by the Court." *Itakura v. Primavera Galleries, Inc.*, Index No. 08-cv-9027, 2009 U.S. Dist. LEXIS 55198, at *4 (S.D.N.Y. June 30, 2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that "are no more than conclusions … are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. Additionally, where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015); *Spiteri v. Russo,* No. 12 Civ. 2780, 2013 WL 4806960, at *8 (E.D.N.Y. Sept. 7, 2013) ("Where an allegation in the complaint conflicts with other allegations … the court is [not] obligated to … accept the allegation in the pleadings as true in deciding a motion to dismiss." (internal quotation marks and citation omitted)), *aff'd sub nom. Spiteri v. Camacho,* 622 Fed. Appx. 9 (2d Cir. 2015).

## IV.   ARGUMENT

Plaintiff's claims are predicated exclusively upon the second-hand word of an unidentified individual. Read in the light most favorable to Plaintiff, the Complaint alleges that she was dissatisfied her professional advancement with Amazon was not proceeding at the pace she had hoped because holding experiential music events was not a priority for Amazon during the COVID-19 pandemic. However, that does not give Plaintiff a cause of action under Section 1981, the NYSHRL or the NYCHRL. *Nothing* about Plaintiff's experience as pled in the Complaint gives any suggestion that she was discriminated or retaliated against and her claims should be dismissed.

11

A.       **Plaintiff Was Not Constructively Discharged**

"[A]n employee is constructively discharged when [her] employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) (claims for constructive discharge "asserted under Title VII and the NYSHRL are analyzed pursuant to the same standard; therefore, analysis of identical claims brought by an individual under both of these laws can be performed in tandem"); *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720, 725 (2d Cir. 2010) (applying this analysis to plaintiff's Section 1981 claim). Nothing in the Complaint suggests Plaintiff experienced any such conduct.

Courts generally break constructive discharge claims into two parts: "the employer's intentional conduct and the intolerable level of work conditions." *Brown v. Montefiore Med. Ctr.*, No. 19 CV 11474 (ALC), 2021 WL 1163797, at *5 (S.D.N.Y. Mar. 25, 2021); *Petrosino*, 385 F.3d at 229. First, a plaintiff must show that the employer intended to create the "intolerable workplace conditions." *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000)). In order to demonstrate such intent, a plaintiff must allege "something beyond mere negligence or ineffectiveness." *Whidbee*, 223 F.3d at 74. "The second part of a constructive discharge claim requires the plaintiff to prove that an objectively reasonable person in the plaintiff's position would find [her] 'work conditions so intolerable as to compel resignation.'" *Brown*, 2021 WL 1163797, at *5 (quoting *McCalla v. City of N.Y.*, No. 15-CV-8002 (LAK) (AJP), 2017 WL 3601182, at *68 (S.D.N.Y. Aug. 14, 2017)). This is a demanding standard because "[c]onstructive discharge cases 'present a worse case harassment scenario, harassment ratcheted up to the breaking point.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301

(S.D.N.Y. 2011) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147-48 (2004)).

With respect to a constructive discharge claim raised under the NYCHRL, New York courts have "not yet ruled as to [the] contours of" this standard. *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *10 (S.D.N.Y. Sept. 18, 2019) (quoting *Tulino v. Ali*, 15-cv-7106 (JSR), 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019)). Nevertheless, courts have made clear that even under the NYCHRL's more generous standard, the plaintiff must allege facts sufficient to support the inference that "the employer deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign." *Id.* (internal quotation marks omitted). Rather than alleging facts to support this proposition, the Complaint alleges that from January 2020 until her departure in February 2022, each of Plaintiff's supervisors lavished praise upon her, encouraging her to continue her employment with Amazon. In the year prior to her resignation, Postelle gave her an "overwhelmingly positive" performance review, characterizing 2021 as Plaintiff's "best year yet." Plaintiff's attempts to characterize her relationship with Postelle as discriminatory do not support a claim of constructive discharge.

Plaintiff's mere dissatisfaction with her budget was not so intolerable as to compel a reasonable to resign – nor is there anything to suggest with plausibility that Amazon's budgetary decisions were intentionally or deliberately motivated by discrimination or retaliation – especially in light of the Complaint's own allegation that "the pandemic significantly impacted [Postelle's] ability to get support for experiential events." (Cplt. ¶ 160.)  In short, because the Complaint's allegations are woefully insufficient to adequately allege that the workplace was so objectively intolerable that any reasonable employee would have felt compelled to quit, or that the Amazon Defendants were motivated by racial discrimination or retaliation, Plaintiff's claim of constructive discharge must be dismissed.

**B.      Plaintiff Was Not Treated Differently Because of Her Race**

**1.      Plaintiff Experienced No Adverse Employment Action**

Section 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Under Section 1981, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). "[N]aked assertions of racial motivation will not suffice to state a cause of action" under Section 1981. *Boomer v. Bruno*, 134 F.Supp.2d 262, 269 (N.D.N.Y. 2001). Instead, "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Jenkins v. Arcade Bldg. Maintenance*, 44 F. Supp. 2d 524, 528 (S.D.N.Y. 1999).

None of the facts alleged in the Complaint are sufficient to satisfy this standard. To the extent Plaintiff purports to rely on her Pivot as an adverse employment action, her discrimination claim fails as a matter of law, because performance management is not an adverse employment action. *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011) ("[A] negative performance evaluation only qualifies as adverse employment action if there are accompanying adverse consequences affecting terms of employment."), *aff'd*, 513 F. App'x 34 (2d Cir. 2013). Because Plaintiff does not – and cannot – allege that her salary, job title, or other terms and conditions of employment changed after her Pivot ended, the Pivot cannot constitute an adverse employment action. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 405-407, 411 (S.D.N.Y. 2014) (granting motion to dismiss because "plaintiff has failed to allege a materially adverse change in the terms and conditions of his employment" so as to sustain his Section 1981 claim). Indeed, after her Pivot process ended in November 2020, she resumed her normal work responsibilities for more than a year until her resignation in February 2022. (Cplt., ¶ 122.)

The Complaint points to several other incidents suffered by Plaintiff, including Akzin providing Plaintiff with little to no support in drafting the 2020 Marketing Plan and excluding her from certain meetings. The Complaint, however, does not plead facts indicating that any of the complained-of conduct caused her to suffer a material adverse change in the conditions of her employment – or that it was motivated by Plaintiff's race. Plaintiff's allegations that, upon information and belief, Akzin "was known to be tougher on people of color" (Cplt., ¶ 18), that "a minority member of her team had made complaints" (*id.*), and that Akzin's "behavior towards Plaintiff seemed heightened in comparison to the more favorable treatment she offered non-minority team members" (*id.*), do not suffice, without more, to raise an inference of discriminatory animus. Accordingly, Plaintiff's claim of discrimination under Section 1981 must be dismissed.

### 2.      Plaintiff Did Not Experience a Hostile Work Environment

#### a.      Section 1981

Section 1981 has "been interpreted to provide a cause of action for race-based employment discrimination based on a hostile work environment." *Littlejohn*, 795 F.3d at 320 (quotation and brackets omitted). "The standard for hostile work environment claims under Title VII [and] § 1981 ... is the same." *Lamarr-Arruz v. CVS Pharmacy, Inc.*, 271 F. Supp. 3d 646, 655 n.6 (S.D.N.Y. 2017) (quotation omitted). To allege a hostile environment claim under federal law, a plaintiff must allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quotation omitted).

Plaintiff fails to plausibly allege behavior "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (internal citation omitted). First, many of Plaintiff's allegations are undermined, if not directly contradicted, by other allegations in his Complaint. *See Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10–CV–1777 (ADS)(AKT), 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) (noting that where a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss" (internal quotation marks omitted)); *see also Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015). For example, Plaintiff makes conclusory allegations that the Amazon Defendants discriminated against her but acknowledges herself that she received consistently positive feedback and reviews from her supervisors (Cplt., ¶¶ 23, 39, 84, 104, 119, 128, 177, 187), including, for example, an "overwhelmingly positive" annual performance review (Cplt., ¶ 133). In addition, even though Plaintiff alleges that she was placed into Pivot, her Pivot process ended in November 2020, and she resumed her normal work responsibilities until her resignation more than a year later in February 2022. (Cplt., ¶ 122.)

Among other things, Plaintiff also claims that Plaintiff's supervisors excluded her from meetings, limited her access to marketing events, and discounted her recommendations for experiential events. (Cplt., ¶¶ 18(b)-(f).)  The Complaint provides nothing other than Plaintiff's subjective belief these incidents were due to her race. (*See, e.g.*, Cplt., ¶ 19.)  And, because a hostile work environment claim has both objective and subjective prongs, "[e]ven if [Plaintiff were to] show a subjective belief that her work environment was hostile," she must still allege conduct making it plausible that "a reasonable person would have concluded that the work environment was hostile." *Ochei v. Coler/Goldwater Memorial Hosp.*, 450 F.Supp.2d 275, 285 (S.D.N.Y.2006).

"Put simply, Plaintiff's subjective belief that there was racial discrimination afoot is insufficient to satisfy her burden at the pleading stage." *See, e.g.*, *Jones v. City of N.Y.*, No. 14-CV-0826 (CBA)(RLM), 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015) (noting that while the plaintiff "may well have subjectively believed that defendants' comments about her weave were tied to her skin color, that is plainly insufficient" (citation omitted)). There are simply no allegations of any word or deed on the part of any of Plaintiff's supervisors or colleagues to suggest that the complained-of conduct was connected in any way to her race. As such, the Complaint fails to state a hostile work environment claim under Section 1981.

  **b.**  **NYSHRL and NYCHRL**

  The New York legislature amended the NYSHRL on August 19, 2019, to establish that its provisions should be construed liberally even if "federal civil rights law, including those laws with provisions worded comparably to the provisions of this article" have been construed narrowly. *Deveaux v. Skechers USA, Inc.*, No. 19-cv-9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020) (quoting N.Y. Legis 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421)). The amended NYSHRL adopts the same standard as the NYCHRL. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). As such, then, in order to adequately state a claim of discrimination or hostile work environment under the NYSHRL or NYCHRL, "a plaintiff must show that [she] was treated 'less well than other employees' on the basis of a protected characteristic." *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) (citing *Mihalik*, 715 F.3d at 110). Thus, at a minimum, a plaintiff must "plead facts tending to show that actions that created the hostile work environment were taken against him because of a prohibited factor." *Williams v. Metro-N. Commuter R. R. Co.*, No. 11 CIV. 7835, 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012). Because this standard is more liberal than the corresponding federal law standards, courts must now analyze NYSHRL and NYCHRL claims "separately and

independently from any federal … claims." *Mihalik*, 715 F.3d at 109 (citations omitted). With that said, even "the NYCHRL is not a general civility code," *Mihalik*, 715 F.3d at 110 (internal quotation marks omitted), and not all unwelcome treatment is actionable under the NYCHRL: the law does not provide relief to a plaintiff who complains of conduct that "consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Williams v. N.Y.C. Housing Auth.*, 872 N.Y.S.2d 27, 41 (1st Dept. 2009) (internal quotation marks omitted).

Here, too, Plaintiff does not allege facts that rise above the level of the sort of "petty slights and trivial inconveniences" that courts have found not to be actionable under state and local law. Instead, Plaintiff relies on conclusory allegations that do not suffice to plead with plausibility a case of hostile work environment. Accordingly, Plaintiff's hostile work environment claim under the NYSHRL and NYCHRL should be dismissed.

### C.   Plaintiff Was Not Retaliated Against

To adequately state a claim of retaliation, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (quoting *Littlejohn*, 795 F.3d at 316). Generally, the "same pleading standards apply" to retaliation claims under Title VII, Section 1981, and the NYSHRL. *See Guity v. Uniondale Union Free Sch. Dist.*, No. 15-cv-5693 (SJF) (AKT), 2017 WL 9485647, at *21 n.14 (E.D.N.Y. Feb. 23, 2017) (collecting cases), report and recommendation adopted, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017). To plausibly plead "a retaliation claim under the NYCHRL, the plaintiff must [allege] that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."

*Mihalik*, 715 F.3d at 112. Under either of these two standards, Plaintiff's claims of retaliation must be dismissed for failure to state a cause of action.

The Complaint alleges that in April 2021, an unnamed "Whistleblower" shared with Plaintiff that Redington identified her as a "problem employee" to her then-supervisors Postelle and Simonian as part of a years-long campaign to exit her from the company because she had complained about Akzin's conduct toward her. (Cplt., ¶¶ 137-38.)  The Complaint characterizes the subsequent support, feedback, and praise that Plaintiff received from Postelle and Simonian as part of this conspiracy (*see, e.g.,* Cplt., ¶¶ 125-32). The theory is absurd on its face, is belied by the facts, and cannot support a cause of action under *Twombly*/*Iqbal*.

It is incumbent upon Plaintiff to establish all four elements of a cause of action sounding in retaliation. She has not done so. For instance, the allegations concerning Plaintiff's alleged complaints to Boom and Redington do *not* allege that Plaintiff disclosed her suspicion that her race was a motivating factor in Akzin's conduct. (Cplt., ¶¶ 23-29.)  As such, those discussions do not constitute protected activity as a matter of law, and cannot satisfy the first prong of the test summarized in *Shultz*. Further, there is nothing in the Complaint to suggest that Redington – who allegedly labeled Plaintiff a "problem employee" in March of 2020 – was even aware of the fact that Plaintiff had suggested to Dizon in late 2019 that Akzin's treatment of her had anything to do with her race. Accordingly, the Complaint does not plausibly plead that the purported retaliatory wrongdoer was aware that Plaintiff had engaged in protected activity. The Complaint is devoid of any other allegation that satisfies the second *Shultz* prong.

And the Complaint cannot satisfy the third and fourth prongs of a claim of retaliation because she has not alleged that she experienced an adverse employment action. Extraordinary claims call for extraordinary proof. If, as the Complaint alleges, Amazon set in motion a plan in

2019 for Plaintiff's eventual departure from Amazon in 2022, Plaintiff must allege more than rank speculation and the second-hand comments of an unidentified "Whistleblower." What's more, even if there were any truth to Plaintiff's "discriminatory laundering" theory, Amazon's plan to force Plaintiff to quit failed spectacularly. After the alleged conversation that Redington had with Postelle and Simonian in March 2020, Plaintiff's employment continued for approximately two more years until she tendered her resignation. During that time, both Postelle and Simonian praised Plaintiff's work and expressed support for her professional advancement within Amazon.

Plaintiff's reliance on the hearsay words of an unidentified "Whistleblower" are insufficient to plausibly state a claim of retaliation. Comments heard second-hand may be considered at the pleading stage, but they "are not as impactful on one's environment as are direct statements [and,] consequently, they are less persuasive in stating a [cause of action]." *Sletten v. LiquidHub, Inc*., No. 13–CV–1146 (NRB), 2014 WL 3388866, at *7 (S.D.N.Y. July 11, 2014) (citing cases). Setting aside the hearsay representations of the anonymous "Whistleblower," a searching review of Plaintiff's 68-page, 245-paragraph Complaint reveals *nothing* in support of Plaintiff's retaliation claim other than legal conclusions, speculation, and the imputation of nefarious motives to supervisors who praised her job performance expressed support for her professional development, and encouraged her to continue her employment with Amazon. The fact that Plaintiff's career with Amazon did not advance at the rate she would have liked does not give rise to a claim of retaliation. This claim must also be dismissed.

## V.    CONCLUSION

For the foregoing reasons, defendants Amazon.com, Inc., and Amazon.com Services LLC respectfully request an Order dismissing Plaintiff's Complaint in its entirety for failure to state a cause of action without leave to replead, and granting to them such additional and further relief as the Court may deem appropriate.

Dated:  New York, New York
        January 16, 2024

                            Respectfully submitted,

                            DAVIS WRIGHT TREMAINE LLP

                            By:____/s/ Michael Goettig_____
                                    Michael Goettig
                                    Rodrigo Tranamil
                            1251 Avenue of the Americas, 21st Floor
                            New York, New York 10020
                            (212) 489-8230
                            *Attorneys for Defendants*