UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KEESHA ANDERSON,

                                                      Case No. 1:23-cv-8347

                    Plaintiff,

        -against-


AMAZON.COM, INC., a Delaware corporation,
AMAZON.COM SERVICES, LLC., a Delaware corporation,

                    Defendants.
------------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SPOLIATION & FAILURE TO OBEY DISCOVERY OBLIGATIONS
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR
DISCOVERY RELATED SANCTIONS**


                                                                       JMD LAW GROUP
                                                                       Jessie M. Djata, Esq.
                                                                       2196 Third Avenue, #31636
                                                                       New York, New York 10035
                                                                       (917) 765-7475
                                                                       *Attorneys for Plaintiff*

## TABLE OF CONTENTS

ARGUMENT……………………………………………………………………………..1

  I. Nothing in Defendants' Opposition Papers Demonstrates that Amazon Has Fully Complied with their Obligations Under Rule 37……………………………….………..…1

  II. Defendants' Cross-Motion for Discovery-Related Sanctions Must Be Dismissed With Prejudice……………………………………………………………………………...7

    A.   Defendants' Motion for Discovery-Related Sanctions is Untimely……………...….7

    B.   Defendants Cannot Establish the Elements of a Case of Spoliation……………....8

CONCLUSION………………………………………………………………………………11

# TABLE OF AUTHORITIES

*Cases:*

E. Jean Carroll v. Donald J. Trump, No. 20-cv-7311 (LAK) (S.D.N.Y 2023)............................10

Massie v. Metro. Museum of Art, No. 11-CV-9549 JPO, 2015
WL 3833839 (S.D.N.Y. 2015)..................................................................................................2

PSG Poker, L.L.C. v. DeRosa-Grund, No. 06 Civ. 1104 (DLC),
2008 U.S. Dist. LEXIS 4225 (S.D.N.Y. Jan. 22, 2008)...................................................7

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)..............................6, 10, 11

*Rules*

Federal Rules of Civil Procedure 37…...................................................................................1, 9, 11

Defendants' opposition to Plaintiff's motion for sanctions and their cross-motion for their own sanctions are nothing more than a carefully constructed fiction aimed at distracting this Court from violations of their duty to preserve relevant evidence under Rule 37 of the Fed. Rule of Civ Proc. This Court should not tolerate Defendants' attempt to evade the consequences of their spoliation/failure to preserve, nor should it lend any credence to their belated cross-motion for sanctions. Plaintiff's motion for sanctions should be granted and defendants' purported cross-motion should be dismissed outright, not only because it lacks merit, but also because, once again, defendants filed it well past the deadline.

**ARGUMENTS**

## I. Nothing in Defendants' Opposition Papers Demonstrates that Amazon Has Fully Complied with their Obligations Under Rule 37

There is no dispute that Defendants destroyed key documentary evidence, causing irreparable prejudice to Plaintiff in this litigation. Defendants' first argument in opposition - - that Plaintiff's complaints did not warrant investigation or documentation - - defies both the facts and their own policies. Plaintiff's complaints to human resources (hereinafter, "HR") during the fall of 2019 were neither vague, or conclusory nor did they amount to generalized complaints about workplace issues. Plaintiff made complaints that she was being subjected to a hostile work environment and her belief that it was tied to her race (black). In support of her belief that Abigail's Akzin's behavior was racially motivated, Plaintiff complained about, 1) the fact that Ms. Akzin brought Terika Palmer, the only other African American employee on the team, to their first meeting because she was black; 2) Ms. Akzin's comment about Plaintiff's alleged "passion for hip-hop,"; 3) disparate treatment she experienced in comparison to a white colleague, Shelby Case; and 4) complaints about her belief that Ms. Akzin humiliated Terika Palmer because of her race. In fact, for each of these complaints, Plaintiff has also presented documentation to support her

1

claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Pg. 11-12. To suggest that such statements failed to rise to the level of protected activity is not only disingenuous but flatly contradicted by controlling law. Moreover, the fact that the "passion for hip-hop" comment was not made directly to Plaintiff is of no consequence. *See* Massie v. Metro. Museum of Art, No. 11-CV-9549 JPO, 2015 WL 3833839 (S.D.N.Y. 2015) (finding "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment.")

Defendants' claim that the records Plaintiff seeks "never existed" is implausible and contradicted by their own Rule 30(b)(6) witness, Kim Costello. Ms. Costello testified unequivocally that complaints alleging "race discrimination," "racial bias," "hostile work environment," or "retaliation" would automatically trigger an investigative process and formal documentation under Amazon's policies. This documentation would have included interviews, findings, and summaries that would be discussed with Amazon's legal department. (*See* Djata Declaration, Exhibit A (Costello EBT, Pg. 41, Lines 19 - 25.)

What's more, during Ms. Costello's deposition, undersigned counsel painstakingly reviewed with her the details of Ms. Anderson's complaints including her complaints to Mark Dizon that Ms. Akzin's behavior was "hostile", "demeaning", "antagonizing", "bullying", created a "toxic environment", as well as the complaints she made that supported Plaintiff's beliefs that Ms. Akzin's behavior was racially motivated. *See* Djata Declaration, Exhibit A, Costello EBT, Pp. 63-69. This included the complaints Plaintiff made to Mark Dizon about Ms. Akzin bringing Terika Palmer to their first meeting, the situation regarding the Terika Palmer apology, and Ms. Akzin's "passion point for hip-hop" comment. *See* Djata Declaration, Exhibit A, Costello EBT,

Pp. 63-69. In response to questions about these specific complaints that Plaintiff had made, Ms. Costello testified as follows:

> Question by Djata: *"Okay. Based on your prior testimony, are these the kinds of complaints that would have resulted in an investigation?"*
>
> Answer by Costello: *"Yes."*
> (*See* Djata Declaration, Exhibit A, Costello EBT, Pg. 69, Lines 9 - 12.)

Moreover, while Plaintiff's complaints to Ryan Redington during the same period were limited to reporting a "hostile" work environment, Ms. Akzin's "demeaning" behavior, and feelings of being "antagonized" by Ms. Akzin's conduct, Ms. Costello's testimony confirms that these concerns would have also been subject to investigation. Mr. Redington, a senior executive at Amazon, testified that in the fall of 2019, he personally informed both Tami Hurwitz, Ms. Akzin's direct manager (*See* Djata Declaration, Exhibit B, Redington EBT, Pg. 64, Lines 3-4) and Emmy Gladney Vallejos in HR (*See* Djata Declaration, Exhibit B, Redington EBT, Pg. 56, Lines 22-25), what Plaintiff had reported about the challenges she was having with Ms. Akzin. And, while Mr. Redington was unable to specifically recall what he had reported, both documentation produced as part of discovery (*See* Djata Declaration, Exhibit B, Redington EBT, Pg. 59-60) and Mr. Redington's testimony confirm that the term "toxic" was used to describe the circumstances. (*See* Djata Declaration, Exhibit B, Redington EBT, pg. 77, Lines 20-25, and Pg. 78, Lines 1-22) Furthermore, when asked whether Mr. Redington had taken notes or discussed Plaintiff's issues with anyone other then Emmy (in reference to Emmy Gladney Vallejos in HR), Mr. Redington testified as follows:

> *"HR would be my protocol to -- if -- if I had to pull on somebody to investigate. So that's -- I discussed with HR, yeah."* (*See* Djata Declaration, Exhibit B, Redington EBT, Pg. 57, Lines 23-25 and Pg. 58, Lines 1-2).

3

Despite Mr. Redington himself stating that his own protocol, in situations like this, was to go to HR *"to investigate"* the matter, not a single document has been produced demonstrating that an investigation was conducted of the issues even raised by Mr. Redington to Ms. Vallejos.

Finally, regarding the complaint made by Jennifer Levine, Defendants assert that no documents exist and attempt to justify this claim by focusing on nonsensical differences between a January 2022 statement by Plaintiff and her September 2024 deposition testimony. (Defs Oppo., Pg. 15-16) Specifically, defense counsel fixates on Plaintiff's use of the term *"as well"* in her January 2022 statement - - where she noted that *"Jenny Levine had also reported her concerns to Human Resources. I believe she made her complaint to Mr. Dizon as well…"* - - and misinterprets it to suggest that Ms. Levine reported her concerns to both Human Resources and Mr. Dizon. In reality, Plaintiff's use of the term *"as well"* was intended to mean that Ms. Levine, like Plaintiff, reported her concerns directly to Mark Dizon. Again, however, this is simply defendants' attempt to distract from the real issue here which is, why they have not produced the documentation of Ms. Levine's complaint and what efforts, if any, were made to attempt to locate such documentation. To date, and despite this Court's order, defendants have done neither.

Ms. Costello's detailed testimony about Amazon's standard investigative and documentation practices makes it implausible that seven verbal complaints to Mark Dizon, three additional complaints to Mr. Redington, and Jennifer Levine's report on Plaintiff's behalf produced no documentation. This glaring absence defies Amazon's own practices and raises serious concerns about the intentional destruction or concealment of evidence. The near-total absence of records for the 11 complaints Plaintiff made in the fall of 2019 is not only improbable but also strongly suggests an intentional failure to preserve or produce these records. Defendants' position is further undermined by the ten additional complaints of retaliation Plaintiff lodged with

4

Mark Dizon between February and August 2020, including an email she sent on August 20, 2020, for which no documents have been produced.

In justifying the lack of documentation surrounding Plaintiff's complaints, Defendants conducted a comparative analysis between a January 2022 affidavit prepared by Plaintiff early in the investigation against the November 11, 2024 affidavit submitted in opposition to defendants' motion for summary judgment to address specific issues. Despite their efforts to make it appear as if Plaintiff's testimony has been meaningfully altered or bolstered in any way, there are no inconsistencies and the information is substantially the same. Defendants have also argued that Plaintiff's reports to Mr. Dizon and Redington were generalized employee grievances that were neither actionable nor warranted an investigation. Defendants' arguments, however, are fundamentally flawed. On the one hand, Defendants assert that Plaintiff's complaints were insufficiently specific to trigger Amazon's formal documentation and investigation process (Defs Oppo., Pg. 10 and Pg. 13-14.) while, on the other hand, defendants have produced evidence of investigations into other workplace issues. For example, the incident that led to Terika Palmer's apology solely involved a disagreement with Ms. Akzin about the reasons why Ms. Palmer had decided to leave the team - - reasons unrelated to claims of discrimination, harassment, disparate treatment, retaliation, or hostile environment, etc. Yet, defendants produced six pages of email correspondence between HR representatives (Emmy Vallejos and Mark Dizon) substantiating the events. *See* Djata Declaration, Exhibit 13. While it remains unclear whether a formal investigation was conducted resulting in an Amazon "Investigation Report", the existence of such documentation highlights the level of attention afforded to this "generalized employee grievance".

Similarly, as part of discovery, Defendants also produced an Investigation Report addressing, among other issues, complaints against Abigail Akzin concerning potential dishonesty

in her efforts to secure a promotion for Jenny Levine. Once again, while these complaints did not involve discrimination, harassment, retaliation or the like, a formal investigation was conducted resulting in a six page "Investigation Report" for an investigation conducted between December 2021 and January 2022. (*See* Djata Declaration, <u>Exhibit E</u>.) Finally, as part of discovery, defendants also produced a two page "Investigation Report" based on a complaint against Tami Hurwitz alleging that she referred to Ms. Akzin as "whiney" during a meeting. (*See* Djata Declaration, <u>Exhibit F</u>.) If Amazon's policies were robust enough to address and document the circumstances leading to Ms. Palmer's apology, complaints about Ms. Akzin's dishonesty and a claim that Ms. Hurwitz called Ms. Akzin "whiney", none of which involved any statutorily protected conduct, this practice undoubtedly would have been applied to the complaints Plaintiff made to Mark Dizon about racial bias and hostile treatment and Ryan Redington about hostile treatment. These examples illustrate that Amazon routinely documents both statutorily protected complaints and more generalized employee grievances in great detail and, thus, raises a critical question: While we maintain that Plaintiff's complaint amounted to statutorily protected conduct, even if defendants assertions that Plaintiff's discussions were merely generalized employee grievances, then why have they not produced any documentation to substantiate those grievances? Given the clear pattern of routinely producing and maintaining such records, the absence of any documentation in this case is glaring and supports the conclusion that critical evidence was either negligently destroyed or deliberately withheld, warranting the sanctions Plaintiff seeks.

Finally, defendants' inability to produce the email that Plaintiff sent to Mr. Dizon on or about August 20, 2020 is inexplicable. While defendants try to mask their dilatory conduct by

raising questions about why¹, if the email ever existed, Plaintiff would not have her own copy. Once again, this is defendants' effort to distract the court from their own non-compliant conduct. While defendants continue to raise questions about whether or not the email ever existed, despite the Court's November 4th order, they have once again failed to confirm any attempt to search for the email or bothered to describe the efforts made in that regard in accordance with the Second Circuit law outlined in <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Also instructive here is the ruling in <u>PSG Poker, L.L.C. v. DeRosa-Grund</u>, No. 06 Civ. 1104 (DLC), 2008 U.S. Dist. LEXIS 4225 (S.D.N.Y. Jan. 22, 2008) where this Court held that [a] party's "repeated failure to either produce relevant documents or a credible story regarding their whereabouts - - despite the admonitions of [the] court and repeated requests from [the opposing party] - - can only be interpreted as an **intentional and willful act**." (Emphasis added)

## II. Defendants' Cross-Motion for Discovery-Related Sanctions Must Be Dismissed With Prejudice

### A. Defendant's Motion for Discovery-Related Sanctions is Untimely

Defendants' so-called "Cross-Motion" for discovery-related sanctions is untimely and procedurally improper. Filed well past the Court's explicit deadline, it violates procedural fairness and should be dismissed summarily. The court's September 26, 2024 Order explicitly states that *"the Court will entertain **any** request for sanctions along with defendants' motion for summary judgment"* (Docket No. 121) While the Court's order was prompted by defendants' interest in filing a sanctions motion pursuant to Rule 11 of the Fed. R. of Civ. Proc., the relevant portion of the Order does not specifically reference Defendants' Rule 11 motion. Instead, the Court expressly noted that it would *"entertain **any** request for sanctions'* by the November 11th deadline for

---

¹ After sending the email, Plaintiff was so afraid of additional backlash, that she deleted it from her own inbox and from her deleted items folder. It is no small point that she was placed in Pivot the day after sending the email.

7

dispositive motions. The Court's deliberate use of the word "any" indicates that it intended, through the plain language of the Order, for it to apply broadly to all sanctions motions and not solely the Rule 11 motion.

Moreover, despite renaming Plaintiff's motion as "Plaintiff's Motion for Discovery-Related Sanctions" in order to give the appearance of seeking similar relief, defendants' motion raises distinct allegations of spoliation unrelated to the core issues raised in Plaintiff's motion. This, in effect, constitutes a new motion for affirmative relief, which falls squarely under the category of *"any request for sanctions"* addressed by the court's September 26th Order. Allowing defendants to circumvent the deadline by framing their late motion as a "cross-motion" would undermine the Court's explicit deadline, which is especially inappropriate given that the issues raised in Defendants' cross-motion do not stem from newly discovered facts or developments arising from Plaintiff's sanctions motion. On the contrary, Defendants' allegations regarding Plaintiff's purported deletion of recordings in violation of preservation obligations are not new and were even addressed repeatedly throughout Defendants' Motion for Summary Judgment papers. If Defendants truly believed their claims had any merit, however, they would have filed their motion by the November 11th deadline. Instead, Defendants strategically filed a cross-motion as a diversionary tactic to shift focus away from the seriousness of their own misconduct in failing to preserve relevant evidence.

If the Court accepts Defendants' untimely filing, it would unfairly prejudice Plaintiff, who, as a result of defendants' cross-motion which was not filed until December 4th, would have been deprived the additional three weeks defendants had to prepare and file her motion. The Court's Order appears to have been designed to promote fairness and efficiency by requiring all sanctions-related motions to be consolidated and filed by the November 11th deadline. Permitting

Defendants' late motion undermines this objective, disrupts the procedural balance, and allows Defendants to gain an unfair advantage through their non-compliance with the Court's directive.

B.   Defendants Cannot Establish the Elements of a Case of Spoliation

Defendants' cross-motion for sanctions rests on the unfounded assertion that Plaintiff willfully destroyed recordings relevant to this litigation. However, a closer examination of the record reveals that their argument lacks both legal and factual merit. Plaintiff's handling of the recordings, far from demonstrating intentional spoliation, reflects a good-faith effort to retain and produce the evidence she deemed relevant at the time. Defendants have not met their burden under Rule 37 to demonstrate the elements required for spoliation: a duty to preserve, a culpable state of mind, and actual prejudice resulting from the alleged destruction of evidence. Their arguments rely on speculation rather than substantiated facts. Accordingly, defendants' cross-motion must be denied.

First, defendants cannot demonstrate the Plaintiff violated her duty to preserve evidence. Defendants contend that Plaintiff's obligations to preserve evidence arose in or about September 2020, when Plaintiff first sought legal advice from undersigned counsel. Counsel, however, was initially retained to provide general 'advice and counsel' regarding Plaintiff's employment circumstances, not to pursue a legal claim against Amazon. As Plaintiff noted during her deposition on September 16, 2024, *"I engaged counsel because I wasn't sure if the treatment that I was having to endure was normal and if it was okay and if it was lawful."* (*See* Djata Declaration, Exhibit C, Plaintiff's EBT, Pg. 229, Lines 24-25) and Pg. 230, Lines, 2-3) At the time, defendants had just placed Plaintiff into Pivot and Plaintiff primarily sought legal advice around that event. And while Plaintiff also provided undersigned counsel with various documents and some recordings to review, it was all in the context of trying to understand her circumstances and

9

whether she was at risk of losing her position with defendants. While defense counsel pointed out during Plaintiff's deposition that medical records submitted by Deepti Anbarasan, M.D. dated November 7, 2020 noted that Plaintiff was *"pursuing legal action"* Plaintiff did not agree with Dr. Anbarasan's representation (*See* Djata Declaration, Exhibit C Plaintiff's EBT, Pg. 232, Lines 2-11) nor did the note in the record contain quotes to reflect Plaintiff's exact words. Regardless of what was represented, however, during that time frame, undersigned counsel was not yet in the process of preparing a case against defendants.

It was not until November 29, 2021, that Plaintiff made the decision to formally retain undersigned counsel to represent her in a potential case against defendants. In fact, it was noted in Plaintiff's retainer agreement that, *"the objective of this legal representation is to settle your claims with Amazon.com, Inc."* While Plaintiff did not ultimately sign the retainer agreement until January 26, 2022, undersigned counsel first provided the agreement to Plaintiff on or about November 29, 2021. Thus, we do not dispute defendants' contentions that by January and February of 2022, Plaintiff was in the process of collecting evidence in anticipation of a potential case against defendants[2]. Indeed that process had begun in November of 2021.

Notably, Plaintiff's retainer agreement appropriately contained the following language:

> *"Until the conclusion of this matter, you must preserve and maintain all documents and electronic records or files in your possession or control that relate to your case in any way. These electronic records include, but are not limited to documents in paper format as well as electronic information stored in work or personal home computers, laptops, PDAs, thumb drives, cell phones, external hard drives, CDs, DVDs, voicemail, video, social networking, websites, online email accounts, blogs or other storage media."* (Anderson Retainer, Pg. 2)

---

[2] Regarding the allegations surrounding the conversation between Josh Fien, while the Audio Recording Log initially labeled the date of the conversation as February 27, 2022, a review of the recorded audio file revealed that the actual date of recording took place on February 20, 2022. *See* Djata Declaration, Exhibit D. As such, Plaintiff was still employed with Amazon at the time of their conversation.

Given that undersigned counsel did not notify Plaintiff of her obligation to preserve records until the end of November 2021, Plaintiff's preservation obligation was not triggered until that time. As such, while Plaintiff did not testify that she had actually deleted any recordings after September 2020, any recordings that Plaintiff may have deleted prior to November 29, 2021 cannot be the subject of a spoliation motion. E. Jean Carroll v. Donald J. Trump, No. 20-cv-7311 (LAK) (S.D.N.Y 2023) (Holding that, because Plaintiff had not yet anticipated litigation or been informed of her obligations to preserve records, Defendant failed to meet their burden of proof necessary to justify sanctions).

Second, defendants cannot establish that Plaintiff had a culpable state of mind. Zubulake at 220. While Plaintiff agreed during her deposition that she had a practice of recording work conversations for note-taking purposes where she would immediately or shortly thereafter delete them, she also testified that she retained all recordings relevant to her case. (*See* Djata Declaration, Exhibit C, Plaintiff's EBT, Pg. 29, Lines 21-22) Furthermore, none of Plaintiff's testimony is evidence of any intention on Plaintiff's part to hide or delete any recordings that would have served or been helpful to defendants. And while defendants point out that Plaintiff testified that she had *"no idea"* how many recordings she deleted, her complete answer to the questions was, *"No idea, if they were even recorded."* (*See* Djata Declaration, Exhibit A Plaintiff's EBT, Pg. 233, Lines 7-10).

Finally, defendants cannot establish any prejudice resulting from the alleged destruction of any recordings. First, Plaintiff did not testify that she in fact created and deleted any recordings of conversations with employees between November 29, 2021 and February 25, 2022, her last day of work. Zubulake at 220. Even in the unlikely event that Plaintiff did create and delete any recordings during that time frame, she testified that was only her practice when recording for "note taking"

11

purposes regarding certain work assignments which were not relevant to her case. *See* Djata Declaration, Exhibit C, Plaintiff's EBT, Pg. 28, Lines 3-10. Furthermore, Plaintiff testified that any and all recordings relevant to her case were turned over to undersigned counsel. *See* Djata Declaration, Exhibit C, Plaintiff's EBT, Pg. 29, Lines 21-24. What's more, defendants have not even identified any particular event or conversation relevant to the case that Plaintiff might have recorded and deleted that would have benefited defendants' case. These allegations are based entirely on speculation. Even more, while a presumption can typically be drawn where *relevant* evidence is destroyed after the obligation to preserve arises, based on Plaintiff's deposition testimony, defendants have no legitimate basis to assert that Plaintiff deleted any recordings after November 29, 2021. And, even if Plaintiff deleted any recordings after that time frame, there is no basis to believe that any such recordings would have contained anything other than information Plaintiff recorded for note-taking purposes and, therefore, not relevant to her case.

## CONCLUSION

For the forgoing reasons and the reasons outlined in Plaintiff's initial moving papers, Plaintiff respectfully urges this Court to grant her motion for sanctions in its entirety, deny Defendants' cross-motion with prejudice, and impose the appropriate sanctions as outlined in Plaintiff's original papers to address the significant prejudice caused by Defendants' actions.

Dated: New York, New York
December 18, 2024

Respectfully submitted,

JMD LAW GROUP

By: /s/ Jessie M. Djata
Jessie M. Djata, Esq.
2196 Third Avenue, #31636
New York, New York 10035
(917) 765-7475
*Attorneys for Plaintiff*

12